HARRIS *v.* SIMS *et al.*

(Division A.  Oct. 21, 1929.  Suggestion of Error Overruled Nov. 18, 1929.)

[124 So. 325.  No. 27961.]

See, also, Sims v. Harris, 124 So. 328.

**S. H. Long** and **C. B. Hutchinson,** both of Tupelo, for appellant.

Bolton & Monaghan, of Tupelo, for appellees.

Argued orally by **S. H. Long**, for appellant, and by **C. W. Bolton**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The state of Mississippi, for the use of Titus Harris, a minor, seventeen years of age, filed a declaration against A. M. Sims, a justice of the peace in Lee county, Mississippi, and the sureties on his official bond, for damages for the false imprisonment, therein alleged, of Titus Harris by Sims, the justice of the peace.

There was a verdict of the jury for seventy-five dollars and a judgment therefor entered by the circuit court, and the plaintiff filed his motion for a new trial on the ground of the inadequacy of the damages, which being overruled, an appeal is prosecuted to this court by Titus Harris, the plaintiff in the court below. A. M. Sims and the sureties on his bond prosecuted a cross-appeal.

On the night of October 5, 1927, the appellant, Titus Harris, in company with two other young men, relatives of the appellant, and bearing the name of Harris, was attending the fair which was in progress in Tupelo. Sims was a justice of the peace, and he and J. W. Francis, a deputy sheriff, were engaged in policing the grounds. About eleven o'clock of the night in question the officers say that these three men, with locked arms, were taking in the midway, staggering through the crowd, and being thus linked together, were pushing aside the people they met, and testified that the three young men were drunk and disorderly. Whereupon the officers arrested the three young men, Sims taking charge

of one, and Francis arresting the other two, and took them to the jail, where they were locked in a cell with six or seven other men. The cell was small, and there were only four bunks on which to sleep. Some of the other parties in the jail were said to be very drunk and boisterous, while some were sick and vomiting.

About eight o'clock the next morning these three boys were released on bond. The officers had no warrants, and there was evidence tending to show that the justice of the peace directed the arrest of this man by Francis, or that he procured the appellant in this case to be arrested.

Titus Harris, the plaintiff, testified that he was sober, that he had not drunk anything, and there was much evidence tending to show that he was not drunk, or drinking. A short time before the arrest, he had been in company with young ladies, who testified that he was not drinking, as did other witnesses who observed him at the time, immediately before the arrest, and during the night.

The officers making the arrest, and other officers, were positive that this young man was drunk. The testimony of the plaintiff tended to show that several times that night relatives offered to make bond, but that the justice of the peace refused him bond, saying that he would be released to them when he was sober.

The pleadings interposed by the defendants set up the two-fold defense: First, that the officer sued did not arrest the plaintiff or cause him to be arrested; and, second, that the plaintiff was arrested at a time when he was drunk in a public place in the presence of the officer, or that a breach of the peace was threatened, or attempted, in his presence.

On the direct appeal the assignment of error only goes to the one point, that seventy-five dollars in damages is wholly inadequate to compensate for the humiliation,

mental pain, and physical discomfort of confinement in a cell under the conditions stated. After the plaintiff had shown that he was arrested while standing, engaged in conversation with others, doing nothing but enjoying the gala occasion of a county fair, without being given opportunity to make bond, and, after the officer had testified that he was drunk in a public place, the plaintiff offered a number of witnesses to show that his general reputation for sobriety was good in the community in which he lived.

In a suit for damages based on false imprisonment, the question is one for a jury, whose finding is not to be disturbed, unless the court can now say that the verdict evinces passion or prejudice on the part of the jury. It may be said that the amount awarded by the jury, from the standpoint of the plaintiff's evidence, was small; it may further be said that the jury accepted the evidence offered by the plaintiff as true—that at the time of his arrest and incarceration he was sober, and not violating any law, or attempting to do so. On the other hand, in the light of all the facts and circumstances, the jury may have concluded that the officers simply made a mistake, in an honest effort to discharge their duty and enforce the law, and the jury may have thought that the amount of the verdict vindicated the good name and fame of the plaintiff, and that the good faith of the officers should mitigate the damages to be allowed.

Whatever may have influenced the jury, there are no extrinsic evidences of passion or prejudice, and we do not feel warranted in invading the province of the jury, which saw the witnesses, observed their demeanor on the witness stand, and were fellow citizens, along with the parties to this suit, of the county in which the case was tried.

On the cross-appeal, the counsel for cross-appellant assigns as error:

First, that the court erred in permitting the evidence of witnesses as to plaintiff's general reputation for sobriety. He being a boy seventeen years of age at the time of his arrest, where the declaration alleged humiliation and damage to reputation, and the officer had testified that he was drunk, we think the testimony on this point was competent. While it is a general rule that parties to a civil suit may not support their position by offering testimony as to their good character or reputation, yet, where a particular trait of an individual is in issue, such evidence is competent. And especially is this true in a false imprisonment case, where damage to the reputation of the particular individual is alleged. And in this case it is shown that the plaintiff had to explain to his neighbors and friends why he spent the night in jail. 25 C. J., p. 544, section 152.

Second, it is insisted that the court erred in not permitting Francis, the deputy sheriff, to testify that he would have arrested the plaintiff if Sims, the justice of the peace, had not been present. We will only say that we do not think the failure to admit this testimony was prejudicial to the defendant, nor could we reverse the case on that ground, for the reason that there was ample evidence offered that the plaintiff was drunk, and the statement of the officer as to what he would have done could not have influenced the jury's finding in this case.

Third. Instruction No. 4, given for the plaintiff, is criticized and assigned as error. This instruction is as follows: "The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence, that the defendant was the procuring cause of the arrest of plaintiff and directed his arrest or helped in same or that he later held the plaintiff in imprisonment under circumstances, which under the other instructions would be unlawful then he is liable for the arrest and you must find your verdict for the plaintiff."

It is suggested that there are two theories upon which the jury was directed by this instruction to find a verdict for plaintiff: First, that the defendant was the procuring cause of the arrest, and this, connected by the disjunctive "or," stands aloof from the balance of the quoted instruction; second, that it is almost equivalent to a peremptory instruction, thereby cutting off all question of whether or not the plaintiff was drunk or sober, or committing an offense, or attempting a breach of the peace. The placing of the comma after the word "circumstances" would indicate, by the strict rules of grammar and punctuation, that the instruction is subject to this criticism. But in this case, where the jury were told in plain language that the commission of an offense, or an attempted or threatened breach of the peace, was a defense to this suit, which would justify the officer in making an arrest without a warrant, we cannot bring ourselves to reverse the case because of the grammar and punctuation. We do not think that the jury was misled by this instruction, when all the instructions are considered and taken together.

Fourth. The following instruction, No. 1, is assigned as error: "The court instructs the jury, for the plaintiff, that when he has proven by a preponderance of the evidence that he was arrested and detained by the defendant without a warrant, that he has made a prima-facie case against the defendant, and the burden of proof shifts to the defendant to prove any justification which he had for the arrest of the plaintiff, and unless the defendant shall show you by a preponderance of the evidence, that the defendant (evidently a clerical error and should have been plaintiff) committed some crime in his presence you will then find for the plaintiff."

It is first contended that the language, "that the defendant committed some crime in his presence," was too narrow; that it omitted the provision of Hemingway's

Code 127, section 1265, which provides that an officer might arrest "for an indictable, offense committed . . . threatened or attempted in his presence." That theory had been announced several times in the instructions, and we do not think error may be predicated upon this contention.

It is next contended that it was error to instruct the jury that the burden of proof shifted to the defendant if and when plaintiff had shown he was arrested without a warrant. The gist of the offense of false imprisonment is the unlawful detention. In this case the plaintiff had shown that he was arrested without warrant, at a time when he was innocent of any offense. The defendant had interposed the affirmative plea that he was justified in arresting without a warrant, because the plaintiff was drunk, or was threatening or attempting a breach of the peace. This being an affirmative plea, the burden of proof to establish his plea, justifying his arrest, was upon the defendant. See 25 C. J., section 146, note 17, and authorities there cited.

"When the imprisonment has been established it devolves upon the defendant to prove that he was justified in what he did or that the imprisonment was lawful." Cyc. of Ev., vol. 5, p. 734.

"The burden of proof is on him who asserts the affirmative issue." Winn v. Skipwith, 14 Smedes & M. 14.

"The party on whom the burden of proof in any cause rests may be determined by considering which would succeed if no evidence were offered by either side, and by examining what would be the effect of striking out of the record the allegation to be proved. The onus must be on the party who, under such tests, would fail in the suit." Porter v. Still, 63 Miss. 357.

The instruction here sought to be condemned placed the burden of proof as to the plea of justification upon

the defendant, who interposed it, and did not deprive the defendant of any substantial right. The instruction secured by the plaintiff placed the burden on him to prove the original issue tendered by his declaration, and then, as to the plea of justification, placed the burden on him who pleaded it to prove, by affirmative defense, that which the plaintiff did not have to negative, although there were allegations in the declaration, in support of his allegation of the various items of damage, that the plaintiff had been arrested at a time when he was not violating any law. And we do not think this instruction is subject to the criticism involved by counsel employed by the court as to those prima-facie instructions, which raise certain presumptions from certain facts, from which negligence is presumed or inferred, and thereby placed upon the party charged with negligence the duty of going forward with his evidence.

There is much confusion in regard to the use of the term "burden of proof." This term is often used when it is only intended that evidence should be brought forward to meet or refute a presumption, and not to overcome it. In the case of Smith v. Hill, 232 Mass. 188, 122 N. E. 310, 2 A. L. R. 1667, we find that the language of Chief Justice SHAW in Powers v. Russell, 13 Pick. 69, at pages 76 and 77, is approved by the Massachusetts court. We think this announcement of the distinguished jurist so clearly stated the rule that we here reproduce it with our approval:

"Where the party having the burden of proof establishes a prima-facie case, and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such prima-facie case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the

party whose case requires the proof of that fact has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate. *But where the party having the burden of proof gives competent and prima-facie evidence of a fact, and the adverse party instead of producing proof which would go to negative the same proposition of fact, proposes to show another and a distinct proposition which avoids the effect of it, there the burden of proof shifts, and rests upon the party proposing to show the latter fact."* (Italics ours.)

In the case at bar the plaintiff had shown that he had been arrested without a warrant and placed in jail, at a time when he was offending no one. The defendant offered to justify his action in arresting the plaintiff by showing that the latter was drunk at the time of his arrest, or that he was threatening to commit a breach of the peace. This was an affirmative issue, the burden of proof was upon him, and the authorities are too numerous, to collate and cite here, to that effect; so that there was no error in the granting of this instruction, nor in refusing those asked by the defendant, which sought to obviate the effect of this instruction. And what we have said applies in the light of the fact that section 1269 of Hemingway's Code 1927 provides that no liability shall be imposed upon an officer who makes an arrest as authorized by law. We do not think that this statute changes the rule of evidence as to the burden of proof.

We find no reversible error in this case, either on direct or cross-appeal.

Affirmed.