DICKINSON et al. *v.* KOENIG, ADMR., et al.

No. 41981          October 23, 1961          133 So. 2d 721

18

*Carter & Van Every,* Columbus, for appellants.

*William J. Threadgill, DeWitt T. Hicks, Jr.,* Colum-
bus, for appellees.

McGEHEE, C. J.

This is a suit for the alleged wrongful death of Albert D. Dickinson, aged seventy-seven, who died as the result of injuries received in an automobile accident on March 26, 1958, which occurred on U. S. Highway 82, about eight miles west of Columbus, Mississippi.

Mr. Dickinson was at the time returning from Haines City, Florida, in company with Messrs. Wenstrom, Maxfield and Garrett, all retired railroad postal employees. There is proof that they made the trip to Florida from Rock Island, Illinois, and remained in Florida for approximately two and one-half months. There is also proof that the actual expense of the trip while traveling was on a share-the-expense basis insofar as Messrs. Dickinson, Wenstrom and Garrett were concerned, the said Maxfield being the owner of the automobile.

The plaintiffs Dale S. Dickinson and Frank Dickinson, residents of Rock Island County, Illinois, brought this suit as the sole heirs-at-law of Albert D. Dickinson, deceased, against Wallace H. Koenig, public administrator

of the estate of Guy W. Maxfield who died as a result of the injuries sustained by him in the wreck of the automobile, and against Glen O. Wenstrom who claims to have been driving the automobile at the time of the accident. In their declaration they alleged that either Guy W. Maxfield, the owner of the car, or the said Glen O. Wenstrom was the driver. There was demurrer to the declaration on the ground that it did not specifically allege who the driver was, and there was a motion for a bill of particulars in that behalf, but which demurrer and motion for bill of particulars were both overruled.

At any rate, Mr. Wenstrom was the sole survivor of the occupants of the automobile, and he testified as a witness in the Circut Court of Lowndes County, Mississippi, in this suit that he was in fact the driver; and that Mr. Maxfield had been driving but that he had requested him to relieve him shortly prior to the accident. Therefore the issue as to who drove the car is moot in view of Wenstrom's admission and testimony, as one of the defendants, that he was the driver. Messrs. Dickinson and Garrett were killed instantly, and Mr. Maxfield died in the hospital during the night of the same day.

■■ ■ Finally, the plaintiffs amended their declaration so as to allege that Wenstrom ordinarily wore glasses and was negligent in not having them on at the time of the accident; that he was not wearing glasses at that time; but the testimony of Wenstrom presented an issue of fact for the jury on that point since he testified that he did in fact have his glasses on at that time, and pointed out to the jury a scar on his eyelid caused by the breaking of his glasses.

■■ ■ The primary issue raised by the plaintiffs in the court below was whether the operator of a motor vehicle who is suddenly stricken by a fainting spell and loses consciousness from an unforeseeable cause is chargeable with negligence. Many courts have granted peremptory instructions in favor of defendants under

such circumstances. Other courts have determined that similar facts present an issue for the jury. This case, being one of novel impression in this State, was submitted to the jury by the trial court, and we think under proper instructions. The jury's verdict was for the defendants, and hence the plaintiffs, sons and sole heirs-at-law of Albert D. Dickinson, deceased, have prosecuted this appeal.

The defendant Wenstrom testified as to his version of what occurred, as follows: "I was driving I understand about eight miles west of here and there was a semi-truck ahead of me and I pulled out to go around it and I looked ahead and there was as I remember one or two semis ahead of him. I had figured that I was pretty close to the junction going north. We were only going to Tupelo that day and I thought 'Well, what is the use of passing this first one, I won't get anywhere', so I slowed up and got back of the semi that I was passing and I slowed down and got back in my right hand lane and that is the last I remember."

The shoulders of the highway were shown to have been practically level on the left or south side for approximately eight feet and they then sloped away. The jury was warranted in finding that the automobile gradually veered from the right-hand side of the road to the left going west, and off the paved portion of the south side, onto the shoulder and traveled a distance of approximately 100 yards from where the left wheels left the pavement and a distance of approximately 80 yards from where the right wheels left the pavement and went into the side of an open concrete culvert that runs under the highway.

It is argued on this appeal that it was utterly impossible for the car to have gone in a straight line and into the open culvert unless it had been guided over the distance thus traveled; but we think that under all of the facts and circumstances an issue was presented to

the jury for determination as to whether or not the driver had been suddenly stricken by a fainting spell and had lost consciousness at a time when he had no previous warning, or reason to anticipate, that he was likely to be suddenly stricken and have a fainting spell as testified about.

The proof shows without dispute that the defendant Wenstrom was in good health and had never been suddenly stricken by a fainting spell at any time previous to the accident; and his testimony in regard to being suddenly stricken and losing consciousness, causing the automobile to veer to the left and leave the highway was wholly undisputed. Nevertheless, we are of the opinion that the issue was properly submitted to the jury as to whether or not he was in fact suddenly stricken with a fainting spell and lost consciousness from an unforeseeable cause.

See 28 A. L. R. 2d. p. 22, Annotation entitled Automobiles—Illness or Drowsiness, which states, in part, as follows: "* * * proof that the driver momentarily lost consciousness and that such loss was not foreseeable constitutes a complete defense to an action against the driver based on negligence or gross negligence.

"The reason for the above rule is that any action of the operator of the vehicle after he lost consciousness is not a voluntary one, so that the stigma of fault cannot attach thereto. * * *"

In the case of Cohen v. Petty, 62 App. D. C. 187, 65 F. 2d 820, decided by the U. S. Circuit Court of Appeals for the District of Columbia in 1933, the Court said: "The sole question is whether, under the circumstances we have narrated, the trial court was justified in taking the case from the jury. We think its action was in all respects correct.

"It is undoubtedly the law that one who is suddenly stricken by an illness, which he had no reason to anticipate, while driving an automobile, which renders it im-

possible for him to control the car, is not chargeable with negligence. Armstrong v. Cook, 250 Mich. 180, 229 N. W. 433; Slattery v. Haley, Dom. Law Rep., 1923 (3), p. 156.''

Also, in the case of Armstrong v. Cook, et ux, 250 Mich. 180, 229 N. W. 433, the Supreme Court of Michigan held that the defendant was entitled to a peremptory instruction where the driver was ''tired'', ''tired and worn out'', and lost consciousness or fainted as she started to cross an intersection and did not regain consciousness until the moment of the impact; the Court saying, among other things, ''The sole proximate cause of the accident was the daughter's fainting, or losing consciousness, which is not actionable negligence.'' See also the case of Ford v. Carew & English, 89 Cal. App. 2d 199, 200 P. 2d 828, wherein the Court said that ''California has approved the rule of Cohen v. Petty, 62 App. D. C. 187, 65 F. 2d 820, that as between an innocent passenger and an innocent fainting driver, the former must suffer.''

In Lobert v. Pack, 337 Pa. 103, 9 A. 2d 365, the Supreme Court of Pennsylvania, after reviewing the authorities, said: ''Nowhere in cases dealing with the subject of torts do we find the suggestion that a person should be held responsible for injuries inflicted during periods of unconsciousness.''

In the case of Weldon Tool Company v. Kelly, 81 Ohio App. 427, 76 N. E. 2d 629, the defendant testified that ''at the time of the accident he had 'blacked out', was unable because of sudden physical ailment to see or control his automobile'', as a result, the defendant's automobile struck the plaintiff's parked truck. The lower court rendered a judgment for the defendant and the plaintiff appealed. The Supreme Court of Ohio affirmed the judgment, and, after quoting from the cases of Cohen v. Petty, supra, and Slattery v. Hailey, 52 Ont. L. 95, stated: ''By the great weight of authority one who becomes suddenly stricken or loses consciousness, due to

an unforeseen cause, while driving an automobile, and as a proximate cause thereof injures another, cannot be charged with negligence under such circumstances.''

This general principle has also been recognized in the following cases: Driver v. Brooks, 176 Va. 317, 10 S. E. 2d 887; Wishone v. Yellow Cab Co., 20 Tenn. App. 229, 97 S. W. 2d 452; Bushness v. Bushnell, 103 Conn. 583, 131 A. 432, 44 A. L. R. 785; Journey v. Zawish, 11 N. J. Misc. 482, 167 A. 7, and Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P. 2d 553.

Two highway patrolmen, Griffin and Waycaster, visited the scene of the accident almost immediately after its occurrence, and they later talked with the defendant Wenstrom in the hospital while he was under heavy sedation and were told that he did not remember who was driving the car, although he had previously stated that he was the driver. But patrolman Griffin testified that Wenstrom ''didn't act like, actually he didn't act like he was at himself at the time,'' referring to the time when he said he didn't remember who the driver was. Mr. Griffin further testified that ''Mr. Wenstrom wasn't in any condition to talk the facts about the deal * * *'' Mr. Waycaster when interrogated about what happened at the hospital was asked ''He was not in any position or condition to be discussing anything, was he?'' and answered ''No, sir, he sure wasn't.''

The plaintiffs endeavored to show that Mr. Maxfield was driving the car, and they based this contention on the ground that the steering wheel was broken and that Mr. Maxfield's chest was severely injured or crushed. But the proof also disclosed that Mr. Wenstrom's chest was injured too. We have concluded that under all of the facts and circumstances testified about in this case, it was an issue for the determination of the jury, both as to who was actually driving the car at the time of the accident, and as to whether or not, if it were Wenstrom,

he was suddenly stricken by a fainting spell and lost consciousness from an unforeseeable cause.

We do not extend the rule as far as it was extended in some of the foregoing cases, but we hold that the issue of whether or not the driver was actually suddenly stricken and had a "blackout" and lost consciousness from an unforeseeable cause should be submitted to the jury under facts similar to those in the instant case. This was done, and the jury resolved the question in favor of the defendants, and we think that there was substantial and ample evidence to support the finding in that behalf. This opinion is not to be construed to require that in every case the issue should be submitted to the jury, but we think that in this particular case, as stated above, under all of the facts and circumstances the issue was properly submitted to the jury.

There is also considerable complaint about comments made by the trial judge in the presence of the jury in sustaining or overruling objections. For instance, counsel for the appellants objected to the opinion of a witness as to whether he saw any evidence of the car speeding. The court overruled the objection, stating: "The testimony shows here according to his testimony and the lady's too that those embankments were damp and soft and it is just common knowledge if a car is running at an excessive rate of speed that you could tell from the tracks made in that soft embankment whether it was running slow or fast." Again in the testimony on this same issue, counsel for appellees stated: "If the Court would like to, we will agree for the Court to tell the jury to disregard that statement. THE COURT: Now, the opinion that was requested of the patrolman was not based only on the pictures, but he had already testified about the tracks being on the highway. * * *" And finally the judge said "The motion is overruled." Thereupon, the jury returned and the court stated to the jury the following: "Now, gentlemen of the jury, just before

you retired the Court commented on the, about some tracks there, how you could tell whether it was running fast or slow, you remember that? I want you to disregard that in making up your verdict, each one of you. Probably the Court shouldn't have made that remark, because he was asked for an opinion and I think he was capable of giving one and I shouldn't have made that remark.'' And further, the Court said: ''Well, objection will be sustained. I don't think that is material one way or the other.'' Thereupon, the attorney for the appellee stated: ''I understand that I could ask him, he being on cross-examination what his — We will keep the whole record straight by withdrawing the question. THE COURT: Well, I think that is the proper thing to do.''

We think that when all of the questions and rulings are considered as a whole that it was error for the trial judge to make the comments, but we do not think that it constitutes reversible error.

In 64 C. J., Section 108, it is said: ''* * * but where remark or conduct is so prejudicial that the impression thereby produced in the minds of the jury cannot reasonably be expected to be removed by an admonition or corrective statement, the impropriety is not thereby cured. * * *''

As was said in the case of Collins v. State, 99 Miss. 47, 54 So. 665, ''We reiterate what the court said in Green v. State, 53 South. 415: 'It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid

prejudice to either party.' '' See also Breland v. State, 180 Miss. 830, 178 So. 817.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.*, concur.