329 So.2d 519 (1976)
Mrs. Josie HINTON
v.
Mrs. Marie McKEE, Executrix of Estate of Julius Roy McKee, Deceased.
No. 48463.
Supreme Court of Mississippi.
March 30, 1976.
Rehearing Denied April 20, 1976.
Melvin & Melvin, Leonard B. Melvin, Jr., Laurel, for appellant.
W. Vol Jones, William Vol Jones, Jr., Waynesboro, for appellee.
*520 Before PATTERSON, ROBERTSON and SUGG, JJ.
SUGG, Justice, for the Court:
Mrs. Josie Hinton, plaintiff, sued Mrs. Marie McKee, Executrix of the Estate of Julius Roy McKee, Deceased, in the Circuit Court of Wayne County for injuries received in a collision in which Julius Roy McKee lost his life.
On November 12, 1971, about 5:30 p.m., plaintiff was driving her automobile south on Highway No. 63 and deceased was driving his pickup north on the same highway. As deceased negotiated a gradual curve to the left, his truck crossed the center line into the plaintiff's lane and struck her automobile head-on causing injuries to plaintiff. The defense was that, immediately prior to the collision, decedent was suddenly stricken with an illness which he had no reason to anticipate and which rendered it impossible for him to control his pickup. Defendant relied on the rule of law in this state that the driver of an automobile is not ordinarily chargeable with negligence when he is suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause and is unable to control his car. Loss of consciousness while driving is a defense to an action based on negligence if such loss of consciousness was not foreseeable. Warren v. Pinnix, 241 So.2d 662 (Miss. 1970) and Dickinson v. Koenig, 242 Miss. 17, 133 So.2d 721 (1961).
In both Warren and Dickinson the drivers of the vehicles survived the accidents and were able to testify that they suffered a sudden loss of consciousness which was not foreseeable. There is no direct evidence in this case that the deceased suffered a sudden loss of consciousness, but defendant attempted to prove that fact by circumtantial evidence.
The deceased had a heart attack on April 6, 1971, which was diagnosed by Dr. Dabbs as an acute myocardial infarction. Dr. Dabbs continued treating the deceased until the day of the collision and stated that the deceased had made a remarkable recovery, that his electrocardiogram had become stable, and that his prognosis was very good. Dr. Dabbs examined deceased on the morning before the collision.
A passenger in plaintiff's automobile testified that she observed deceased's pickup cross the center line into the plaintiff's lane of travel, that plaintiff slowed almost to a stop, and that deceased's pickup struck plaintiff's automobile head-on. She further testified that deceased remained seated upright in his pickup for a short interval after the collision and was able to get out of his pickup and take several steps toward the vehicle of plaintiff when he suddenly collapsed and died. Another witness stated that he took only one step after getting out of his pickup.
Dr. Dabbs testified that the cause of death was an acute coronary thrombosis, such diagnosis being based on the doctor's examination of the patient and knowledge of his past history. An autopsy was not performed on the body of the deceased.
The burden of proving the affirmative defense that decedent suffered a blackout or loss of consciousness rested on the defendant. The burden is on a defendant to prove matter in avoidance, special or affirmative defenses, and other new matter urged by him as ground for denying a plaintiff relief. Cf. Commercial Union Insurance Co. v. Byrne, 248 So.2d 777, 782 (Miss. 1971). In Harris v. Sims, 155 Miss. 207, 124 So. 325 (1929), a false imprisonment case, an instruction secured by the plaintiff placed the burden on him [plaintiff] to prove the original issue tendered by his declaration, and then, as to the plea of justification, placed the burden on the defendant who pleaded it to prove it by a preponderance of the evidence. There the Court said:
"Where the party having the burden of proof establishes a prima facie case, *521 and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such prima facie case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the party whose case requires the proof of that fact has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate. But where the party having the burden of proof gives competent and prima facie evidence of a fact, and the adverse party instead of producing proof which would go to negative the same proposition of fact, proposes to show another and a distinct proposition which avoids the effect of it, there the burden of proof shifts, and rests upon the party proposing to show the latter fact." [Original emphasis] (155 Miss. at 218-219, 124 So. at 328).
In our case plaintiff proved that decedent's vehicle crossed the center line of the highway and struck plaintiff's vehicle head-on in plaintiff's lane of travel. Plaintiff's evidence established the negligence of defendant, and she thus met the burden of proving her case by a preponderance of the evidence. The defendant did not offer any proof to negate the negligence of decedent, but sought to avoid his negligence by proving the affirmative defense of loss of consciousness. The burden of proof then shifted and rested on the defendant to prove the affirmative defense by a preponderance of the evidence.
We are of the opinion that since defendant's proof of the affirmative defense was so weak, this is one of those rare cases which should be remanded for a new trial before another jury.
REVERSED AND REMANDED.
GILLESPIE, C.J., INZER, P.J., and WALKER, BROOM and LEE, JJ., concur.
PATTERSON, P.J., and SMITH and ROBERTSON, JJ., dissent.
ROBERTSON, Justice (dissenting):
I would affirm the jury verdict for the defendant. This case was fully and fairly tried, the evidence fully developed, and the jury properly and correctly instructed as to the law.
There was ample circumstantial evidence to justify and support the jury verdict. Even in criminal cases we have said that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury. Long ago, in Johnson v. State, 23 So.2d 499 (Miss. 1945), we stated this principle:
"It was long ago held by this Court in the case of Browning v. State, 33 Miss. 47, citing Cicely v. State, 13 Smedes & M. (21 Miss.) 202, 211, and the principle has been uniformly adhered to since that time, that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, `because it is always solemnly to be weighed and acted upon by their understandings and consciences, and is, from its very nature, the subject of inferences and conclusions in their minds,' and that `a verdict, therefore, found on circumstantial evidence, will always be permitted to stand unless it is opposed by a decided preponderance of the evidence, or is based on no evidence whatever.'" 23 So.2d at 500. (Emphasis added).
Another principle is that an appellate court is to look with favor on all evidence that supports the jury's verdict.
This jury had before it this evidence: J.R. McKee, five minutes before the collision, had carefully driven his pickup truck up to the highway, looked both ways and then slowly driven into the highway. Five minutes later, McKee's pickup truck was observed gradually crossing the center line of the highway and proceeding inexorably on its course into a head-on *522 collision with Mrs. Hinton's car, which was in its proper lane and almost stopped.
Mrs. Madelyn Parker and Joel Holifield, witnesses called by the plaintiff, both testified that after the accident McKee got out of his pickup truck and without saying a word to anybody he took one or two steps and fell face down.
The pictures in evidence show no appreciable damage to McKee's truck. Dr. James Dabbs, McKee's family physician, testified that he had been treating him since April 3, 1971, for an acute myocardial infarction, that he had examined McKee at the hospital a few minutes after the accident, that the cause of death was "Acute Coronary Thrombosis" and that the interval between onset and death was "few minutes". In elaborating on the duration of heart attacks, Dr. Dabbs further testified:
"Of course, a massive coronary, one that is beyond the stage of recovery, they may not live but just a few moments. To put it in exact minutes and times, I have seen them where they were almost instantaneous, just lasting a few minutes, 30 minutes or less, or four or five minutes, something of this sort. I think it would be hardput for any physician to put an exact time on it. I don't think you can." (Emphasis added).
Dr. Dabbs was vigorously cross-examined as to whether there were any bruises on his chest, particularly on the left side of the heart cavity. The doctor's answer was "No". Dr. Dabbs' expert opinion was that the sole cause of death was an acute coronary thrombosis.
With this undisputed and irrefutable evidence before it, I think that the jury would be hard put to draw any other inference than the normal and logical one that McKee was in the throes of a fatal heart attack at the time his pickup truck gradually crossed the center line of the highway and that it was impossible for him to control the inexorable course of his pickup truck, which proceeded in a straight line to a head-on collision with the plaintiff's automobile. Surely it would have been illogical and unreasonable for the jury to conclude that McKee deliberately drove his truck head-on into the car of the plaintiff when five minutes before the accident he had carefully driven his pickup truck up to the highway, stopped and looked both ways, and then driven slowly onto the highway. The jury also had before it the doctor's statement that he had allowed McKee to go back to work on a half day basis on May 28, 1971, and that he had driven his pickup truck without incident since that time.
This is a much stronger case than either Warren v. Pinnix, 241 So.2d 662 (Miss. 1970), or Dickinson et al. v. Koenig, Admr., 242 Miss. 17, 133 So.2d 721 (1961). Warren, immediately after the accident, extracted his driver's license from his wallet at the request of a police officer, and undertook to start his motor. It was undisputed in Warren had he had a stroke or a cerebral vascular hemorrhage, that he "shortly after the collision fell to the ground unconscious, and that he was in a coma at the hospital for twelve hours." Warren did live to testify in his case. A jury verdict for the plaintiff was reversed by this Court because the one instruction granted the plaintiff on Warren's affirmative defense placed a greater burden on Warren than this Court thought proper and was thus misleading to the jury.
In Dickinson et al. v. Koenig, Admr., supra, Wenstrom, the driver, was the only survivor of a one-car accident, where the car driven by him gradually crossed the center line of the highway and ran into a culvert on the wrong side of the highway. The other three occupants of the car were killed. In affirming the jury verdict for the defendants, this Court said:
"The primary issue raised by the plaintiffs in the court below was whether the operator of a motor vehicle who is suddenly stricken by a fainting spell and *523 loses consciousness from an unforeseeable cause is chargeable with negligence. Many courts have granted peremptory instructions in favor of defendants under such circumstances. Other courts have determined that similar facts present an issue for the jury. This case, being one of novel impression in this State, was submitted to the jury by the trial court, and we think under proper instructions. The jury's verdict was for the defendants, and hence the plaintiffs, sons and sole heirs-at-law of Albert D. Dickinson, deceased, have prosecuted this appeal.
"The defendant Wenstrom testified as to his version of what occurred, as follows: `I was driving I understand about eight miles west of here and there was a semi-truck ahead of me and I pulled out to go around it and I looked ahead and there was as I remember one or two semis ahead of him. I had figured that I was pretty close to the junction going north. We were only going to Tupelo that day and I thought "Well, what is the use of passing this first one, I won't get anywhere", so I slowed up and got back of the semi that I was passing and I slowed down and got back in my right hand lane and that is the last I remember.'"
......
"See 28 A.L.R.2d, p. 22, Annotation entitled Automobiles  Illness or Drowsiness, which states, in part, as follows: `* * * proof that the driver momentarily lost consciousness and that such loss was not foreseeable constitutes a complete defense to an action against the driver based on negligence or gross negligence'." 242 Miss. at 22-24, 133 So.2d at 722-23. (Emphasis added).
In many cases circumstantial evidence is more reliable than direct evidence. In my opinion this is just such a case. McKee was dead at the scene of the accident beside his pickup truck, which was only slightly damaged. McKee's own doctor testified that there were no bruises on his chest, and he further testified positively and unequivocally that he died of an acute coronary thrombosis of a "few minutes" duration.
The jury was fully justified in returning a verdict for the defendant and the jury's verdict is supported by ample and substantial evidence. If we look at the evidence supporting the jury's verdict in its most favorable light, which we are required to do, I think we are duty-bound to affirm the verdict.
PATTERSON, P.J., and SMITH, J., concur.