562 So.2d 1252 (1990)
Charles Edward WALL and Mary B. Wall
v.
William F. SWILLEY and Carol B. Swilley, Jointly and Individually.
No. 07-CA-59577.
Supreme Court of Mississippi.
April 25, 1990.
*1254 Richard H. Young, Samuel S. Creel, Jr., Brandon, for appellants.
John B. Toney, Rainer, Hyche & Toney, Brandon, for appellees.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from an action the purchasers of residential real property brought against their sellers, charging material misrepresentation in the condition of the foundation of the dwelling incident to the sale. The appeal concerns only purchasers' damages: their measure and the quality of evidence requisite to recovery.
For the reasons set forth below, we hold the Circuit Court improperly evaluated purchasers' proof of damages and erred when it directed a verdict for sellers. We reverse and remand.

II.
Charles Edward Wall and Mary B. Wall, husband and wife, are the appellants, plaintiffs below. William F. Swilley (known to his friends as Billy Fox) and Carol B. Swilley, also husband and wife, are the appellees, defendants below.
The Walls are natives of Mississippi but had lived out of the state for twelve years. In mid-July of 1980, Charles and Mary came to Brandon, Mississippi, in search of a home in which to live upon relocating from Alabama. Charles, an engineer by profession and education, was taking a job with Hughes Aircraft in Forest, Mississippi. Through the offices of Swilley Realty & Investments, Charles and Mary located a house at 102 Deborah Drive in Brandon. This house is the subject of the present action.
On August 7, 1980, the Walls signed a Contract of Sale and Purchase of Real Estate wherein the Swilleys agreed to sell and the Walls agreed to purchase the property for an aggregate consideration of $69,500.00. Charles and Mary moved into the newly remodeled home in September of 1980, the first Charles had seen of the house since July. The sale was formally closed on October 10, 1980.
In July, 1981, the Walls noticed doors to the house were sticking. Two to three years later, they noticed the floor in the den was sinking. The house continued to deteriorate; cracks on walls that had been taped and painted over were exposed. The interior of the house was eventually a shambles due to the shifting and settling of the foundation. Finally in February of 1986, Mary and Charles Wall discussed the problems with Billy Fox and Carol Swilley. *1255 The Swilleys expressed sympathy but were not moved beyond that.
On April 14, 1986, the Walls commenced this civil action by filing the complaint in the Circuit Court of Rankin County, Mississippi. The complaint alleged, in part, that there was a latent structural problem with the foundation of the house that was the cause of the other damage to the interior of the house. Further, the complaint charged the Swilleys knew of the existence of this foundation problem and failed at or prior to the sale to disclose this information to the Walls. The Walls demanded compensatory and exemplary damages. The Swilleys' answer of May 23, 1986, generally denied the essential allegations of the complaint.
The Circuit Court called the case for trial on August 12, 1987. At the conclusion of the Walls' case, the Swilleys moved for a directed verdict. The Court granted the motion, citing the legal insufficiency of the Walls' proof on the matter of damages. The Court thereafter entered final judgment dismissing the Walls' complaint.
This appeal has followed.

III.
No issue is tendered regarding the liability phase of the Walls' action. Our attention is directed to the measure of damages in an action for misrepresentation incident of sale of real property, the quality of evidence the measure demands, and the subsidiary question of whether the Walls produced evidence sufficient to establish a prima facie case and avoid a directed verdict.
Our first question is one of evidence. The Walls called Steven McNair, who was accepted as an expert in real property appraisals. McNair began by giving his opinion of the present fair market value of the house in a nondefective condition, using as his referent comparable sales for the period 1985 to 1987. His value estimate was approximately $75,000. Having regard to the foundation damage and the Walls' ensuing problems, McNair estimated $20,000 as the current fair market value of the house "as is." McNair then itemized the repairs that would be needed and their cost as of the date of trial. He estimated the total cost of repairs to be $52,500. This testimony was tied to the Summer of 1987, just under seven years after the sale.
McNair reviewed a 1980 appraisal of the house done incident to its sale. He stated that it was similar to the appraisal he had done and contained no obvious errors. This appraisal did not include any of the foundation problems. McNair testified that he could construct an estimate of fair market value of the house in 1980, with the foundation problems that it had in 1987, but he did not do so.[1]
In this context, the Swilleys objected to the admissibility of McNair's testimony on grounds it was not properly tied to 1980 and, specifically, that it did not give the actual or real fair market value of the home in September of 1980. The Circuit Court sustained the objection and, thereupon, granted the Swilleys' motion for a directed verdict.
The law measures the Walls' loss on the date it occurred, the date they purchased the misrepresented property, although it seems clear they may push that forward to the date when they first discovered, or with reasonable diligence, should have discovered the defective foundation. It is true that McNair's testimony was not tied to real value in 1980, the date of sale. We think this goes to weight, not admissibility. The Swilleys were free to attack McNair's opinions, on cross-examination or through evidence of their own, suggesting any reason why his opinion might be made to appear excessive. The Swilleys were clearly entitled to challenge the necessity for the repairs McNair recommended, their proximate relation to the misrepresentation at issue, and the reasonableness of his cost estimates.
No doubt the Swilleys may point to the fact that the cost of repairs has increased *1256 since 1980 (if that has been the case) and that they should not in fairness be charged with the increase. Fairness is a two-way street, and we must acknowledge that the Swilleys have had the use of their money for nigh unto a decade, and, conversely, the Walls have for a like time been denied the use of money to which they may in law have been entitled. Nothing before us shows how the scales tip when home repair cost increases are balanced against the cost of money, and for aught we know the Swilleys may have the long end of the stick. We view McNair's testimony against this backdrop. For the moment we but hold that the Circuit Court erred when it sustained the Swilley's objection to McNair's testimony.

IV.
We turn now to the Circuit Court's order granting the Swilleys' motion for a directed verdict made after the Walls rested their case. Such a motion, made under the procedural vehicle of Rule 50(a), Miss. R.Civ.P., tests the legal sufficiency of the plaintiffs' evidence. The Circuit Court  and this Court on appeal  are required to consider the evidence in the light most favorable to the plaintiffs Wall, giving those plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the evidence. Unless the evidence is so lacking that no reasonable jury could find for plaintiffs, the motion must be denied. See, e.g., Wilner v. Mississippi Export Railroad Company, 546 So.2d 678, 681 (Miss. 1989); Robinson v. Hawkins, 541 So.2d 1048, 1050 (Miss. 1989); Upton v. Magnolia Electric Power Association, 511 So.2d 939, 943 (Miss. 1987); White v. Hancock Bank, 477 So.2d 265, 268-69 (Miss. 1985). In today's context where liability is not in issue and where the fact of damage is clear, the Court may not direct a verdict against the plaintiffs Wall unless the evidence is so speculative that no reasonable juror could find more than nominal damages.
In cases such as this, where rescission is not sought, the law seeks to place the victim in the economic position he would have enjoyed had he received what he bargained for. Leard v. Breland, 514 So.2d 778, 782 (Miss. 1987); Davidson v. Rogers, 431 So.2d 483, 485 (Miss. 1983). Our focus is upon a monetary remedy. That remedy must be such that the breaching party is not charged beyond the trouble his default has caused, and to that end the law limits speculation and conjecture and imposes familiar duties of mitigation.
Whatever the measure of damages, they may be recovered only where and to the extent that the evidence removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty. Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 415 (Miss. 1989); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1352 (Miss. 1987). See also, Thomas v. Global Boat Builders & Repairmen, Inc., 482 So.2d 1112, 1116-17 (Miss. 1986). This principle is of importance today, as we remember that a measure of speculation and conjecture attends even damage proof all would agree reasonably certain. Cf. City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983).
One measure of damages generally fitting these premises we know as the "benefit-of-the-bargain" rule. Under this rule, a purchaser, victim of a seller's material misrepresentation, may recover the difference between the real value of the property and the represented value of the property, the date of sale/discovery being the touchstone. This rule gives to the purchaser the value he would have received had the seller performed the bargain and had the facts been as the seller represented them. We recognized this rule in Hunt v. Sherrill, 195 Miss. 688, 15 So.2d 426 (1943) and have enforced it in Lloyd Ford Company v. Sharp, 192 So.2d 398, 400 (Miss. 1966), and more recently in Davidson v. Rogers, 431 So.2d at 485.
The represented value of the property the Swilleys sold to the Walls is prima facie $69,500.00, the sale price. We imply from the contract that the Swilleys represented, and the Walls understood, the value of the house to have been $69,500.00. *1257 What is missing is evidence of real or actual value on October 10, 1980, and it was by reason of this deficiency that the Circuit Court directed a verdict against the Walls.
In considering whether the Court acted correctly, we must view all of the Walls' evidence on damages. In saying this, we emphasize the lack of dispute on a fundamental point: the fact of some substantial damage. At trial, the Walls called a number of witnesses on the issue of damages. William J. Harris, Jr., an expert in the area of mechanical engineering and building construction, testified that the cost of repairing the house would be between $20,000 and $30,000 depending on the degree of unseen interior damage. Thomas Murry estimated the cost of repairing the foundation at $19,000. We include as well the proffered testimony of appraisal expert, Steven McNair. See Hardy v. Brantley, 471 So.2d 358, 368 (Miss. 1985); Hall v. Hilbun, 466 So.2d 856, 879 (Miss. 1985). The question is whether a hypothetical reasonable jury could on this evidence have returned a more than nominal damages verdict that, given our limited scope of review on appeal, we would have had to affirm. The answer may only be, Yes, lest we be seen to have left our common sense at home.
Both sides talked much of Davidson v. Rogers. In Davidson, the plaintiff purchaser offered expert testimony that at the date of sale, the real value of the property was $23,500.00, or some $18,299.62 less than the $41,799.62 purchase price. The Court held this evidence to satisfy the "benefit-of-the-bargain" rule and that the purchasers were entitled to damages in the amount of $18,299.62. The Walls' failure to supply this bottom figure is what we are told is the fatal deficiency in their claim. We have carefully reviewed the "benefit-of-the-bargain" cases from Hunt v. Sherrill through Davidson v. Rogers. Nothing in these cases' acceptance of the rule suggests the only way its measure may be met is through retroactive appraisals. Experience and reflection have taught that there are many indicia of value to which courts may resort with profit, varying only with the context, quality, and quantity of data available. We have recognized approaches to value predicated upon comparative sales, income streams, and costs, and often a combination of these and others. See, e.g., Rebelwood Ltd. v. Hinds County, 544 So.2d 1356, 1360-62 (Miss. 1989); Crocker v. Mississippi State Highway Commission, 534 So.2d 549, 553 (Miss. 1988); Xerox Corporation v. City of Jackson, 328 So.2d 330, 331 (Miss. 1976).
Costs of repairs is one sensible way of showing such, a point we take as the import of the "out-of-pocket" rule, also recognized in Hunt v. Sherrill, 195 Miss. at 699-700, 15 So.2d at 430. Costs of repairs has been recognized as a method of proving damages in our prior cases, e.g., Bell v. First Columbus National Bank, 493 So.2d 964, 969 (Miss. 1986); Thomas v. Global Boat Builders and Repairmen, Inc., 482 So.2d at 1115; Teledyne Exploration Company v. Dickerson, 253 So.2d 817, 819 (Miss. 1971); Bynum v. Mandrel Industries, Inc., 241 So.2d 629, 634-36 (Miss. 1970), and in the courts of other states as well. See also Slack v. Sodal, 190 Colo. 411, 413-14, 547 P.2d 923, 924 (1976); Young v. Joyce, 351 A.2d 857, 859 (Del. 1975); Orkin Exterminating Co., Inc. v. Bryan, 163 Ga. App. 804, 805, 294 S.E.2d 683, 684 (1982); Munjal v. Baird & Warner, Inc., 138 Ill. App.3d 172, 186-87, 92 Ill.Dec. 809, 821, 485 N.E.2d 855, 867 (1985); Kramer v. Chabot, 564 A.2d 292, 294-95 (Vt. 1989); Ollerman v. O'Rourke Co., 94 Wis.2d 17, 53, 288 N.W.2d 95, 112-13 (1980); Restatement (Second) of Torts § 549, comment 1 (1977); see generally R. Dunn, Recovery of Damages for Fraud § 2.18 (1988). In Ollerman v. O'Rourke Co., the Wisconsin Supreme Court found cost of repair to be an alternative method of determining damages:
The damages necessary to give the purchaser the benefit of the bargain will depend on the nature of the bargain and the circumstance of each case ... Under the benefit of the bargain rule, an alternative measure of recovery is the reasonable cost of placing the property received in the condition in which it was represented to be... .
Ollerman, 94 Wis.2d at 53, 288 N.W.2d at 112-13.
*1258 Where, as here, the evidence partakes of valuation testimony as well as cost of repair testimony, the Court must be careful to assure that the plaintiff obtains no double recovery or unjust enrichment. See City of Jackson v. Keane, 502 So.2d 1185, 1187 (Miss. 1987); Bell v. First Columbus National Bank, 493 So.2d 964, 969-71 (Miss. 1986). Beyond this, the Walls' measure of damages is not cost of repairs today, as noted in Section III above. The operative date is that on which they discovered the foundation damage or with reasonable diligence should have discovered it, or, in the absence of proof thereat, the date of sale, and the question is what would it have cost on that date to give the Walls the benefit of their bargain. The Walls are limited to recovering the reasonable losses they necessarily incurred by reason of the Swilleys' actionable conduct. They are not entitled to be placed in a better position than they would have been if the house delivered had been what the Swilleys had represented it to be. Leard v. Breland, 514 So.2d at 782. On the other hand, to make the Walls whole, the cost of money during the years they have been denied use of what in law should have been theirs, may suggest an award of pre-judgment interest, although we leave that matter to the sound discretion and good judgment of the Circuit Court. See Weeks v. Cal-Maine Foods, Inc., 522 So.2d 725, 729 (Miss. 1987); Jim Murphy & Associates, Inc. v. Lebleu, 511 So.2d 886, 895 (Miss. 1987).
Present here is a further factor requiring note. The Walls waited a considerable period of time before bringing their action. They suffer no default because of this, but, upon discovering the foundation damages, they were not without duties to the Swilleys, duties substantially obligatory where, as here, the Walls seek recovery from the Swilleys. The Walls were charged with a duty of mitigating their damages. See Kruse v. Miller, 143 Cal. App.2d 656, 661, 300 P.2d 855, 858 (1956); Inner City Wrecking Co. v. Bilsky, 51 Ohio App.2d 220, 229-30, 367 N.E.2d 1214, 1220 (1977); Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 234 (Tenn. App. 1977). Of course, mitigation is an affirmative defense and the Swilleys were burdened to charge and prove that the Walls had failed in their duty. See Conder v. A.L. Williams & Assoc., 739 P.2d 634, 639 (Utah App. 1987); see McCormick, The Law of Damages, § 33 at 127 (1935).
In the case sub judice, the Walls established without doubt the fact of substantial damage and presented three estimates of the cost of placing the house in the condition in which it was represented to be, i.e., having no foundation problems. Nothing said here is intended to compliment the Walls on the form or substance of their damages proof. What  and all  we hold this day is that, in the aggregate, the Walls' evidence was adequate such that a hypothetical reasonable juror could have found damages for the Walls at some amount above nominal damages. Accordingly, the Circuit Court erred when it granted the Swilleys' motion for a directed verdict at the conclusion of the Walls' case-in-chief. We reverse the judgment below and remand the case to the Circuit Court for a new trial not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The record suggests the Walls' counsel was surprised at the need for this testimony. He moved for a continuance to allow McNair to do the necessary research and study so that he could give a 1980 opinion of real fair market value. The Circuit Court denied the motion.