Teddy Cummins brought this action in the Circuit Court of Washington County, against defendants Century 21 Realty and Real Estate Agent Betty Stone, individually. He claimed that the Realty and its agent, Stone, failed to inform him of certain pre-existing termite damage in a home he purchased in Greenville. He filed suit against the Realty and Stone, seeking damages based on multiple theories of negligence, negligent misrepresentation, gross negligence, strict liability, breach of warranty and fraud.
Following the presentation of Cummins' case, the defendants moved for a directed verdict as to the majority of his claims, including the proof of the amount of damages suffered. The trial court granted the motion for a partial directed verdict, and, as to the remaining issues, the jury found in favor of the defendants. Cummins has now appealed, citing as error the following:
 (1) THE TRIAL COURT ERRED IN EXCLUDING THE EXPERT TESTIMONY OF PAUL ABIDE.
 (2) THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLANT'S REPAIR ESTIMATES WERE INADMISSIBLE AS EVIDENCE AND COMMITTED FURTHER ERROR IN EXCLUDING EXPERT TESTIMONY FROM CHARLES DILLON AND EZZIE SMITH, THE BUILDING CONTRACTORS WHO PREPARED SAID ESTIMATES.
 (3) THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION IN LIMINE AT THE OUTSET OF THE TRIAL.
 (4) THE TRIAL COURT ERRED IN REFUSING TO ADMIT MEDICAL EXPENSES INTO EVIDENCE.
 (5) THE TRIAL COURT ERRED IN GRANTING THE APPELLEES' MOTION FOR A DIRECTED VERDICT AT THE CONCLUSION OF THE APPELLANT'S CASE.
 (6) THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL.
 I.
On January 6, 1986, Teddy Cummins purchased a home located at 1462 Fairview Street in Greenville, Mississippi, for $27,402.00. Prior to his purchase of this home, he had been in touch with a real estate agent by the name of Betty Stone, who was an agent working for Century 21 Action Realty, Inc. According to Cummins, the home had extensive preexisting termite damage that was not disclosed to him. Directly contradicting his testimony was the testimony of Ms. Stone, who testified that Cummins was indeed aware of the termite damage to the home, both from a listing of the home in a multiple listing book used by real estate firms, and through her discussing *Page 1384 
the damage to the home.[1]
Cummins first sued the termite company that treated the home for termite protection, and later he amended his complaint to include the realtor, Ms. Stone, individually, and Century 21 Action Realty Inc., the realty firm with which Stone was affiliated, based on negligence, negligent misrepresentation of the facts, strict liability in tort, breach of warranty and fraud. Cummins settled with Mann Termite Pest Control, for nondisclosure of the extent of the termite damage for $10,000.00, and signed a covenant not to sue.
At trial against the remaining defendants, the trial court held that the measure of the property damages would be the "before and after" rule or the "benefit of the bargain" rule, as opposed to the cost of repairs. Two contractors who had observed the home and assessed the extent of the termite damage, were called to testify, but their testimony was disallowed because it was deemed cumulative and akin to introducing the cost of repairs. Their testimony was therefore proffered.
An expert in the field of entomology and termite infestation, Mike Peeples, did testify as to the extensive damage to the plaintiffs' home, and his report was introduced into evidence. A final expert, Paul Abide, was called to testify on behalf of the plaintiff, and gave an opinion as to the market value of the home at the time of purchase.[2] Following Mr. Abide's testimony, a motion was made in the presence of the jury to exclude his entire testimony; the motion was sustained by the trial court.
The plaintiff then rested and a partial directed verdict was granted in favor of the defendants on the claim of fraud, gross negligence, breach of warranty, and strict liability. The trial court allowed the jury to consider Cummins' remaining claims. The trial judge made no specific finding concerning the claim based on negligence or negligent misrepresentation of facts; therefore, it appears these issues were submitted to the jury. Upon deliberation, the jury returned a verdict in favor of the defendants. This appeal followed.
 II.
SHOULD THE AMOUNT OF DAMAGES ISSUES BE ADDRESSED, IN LIGHT OF THE FACT THAT THE LIABILITY QUESTION WAS PRESENTED TO THE JURY AND DECIDED ADVERSELY TO THE APPELLANT'S POSITION?
Of the five assignments of error listed by Cummins, three of them relate to the proper manner in which to estimate damages. If the issue of liability was properly submitted to the jury and decided adversely to Cummins' position, the question of damages becomes moot.
As noted earlier, Cummins and Betty Stone essentially presented diametrically opposed views of any conversations which transpired between them concerning the extent of the termite damage to the home. Cummins' testimony relative to this issue is as follows:
 Q. Did you know of any damage to this house before you bought it?
 A. No.
 Q. Did you see any documentation concerning termite damage? *Page 1385 
 A. No.
 Q. Did Ms. Stone ever tell you about termite damage?
 A. No.
 Q. Did you see any multiple listing book concerning termite damage?
 A. No.
(Vol. II, R. 9-10).
On the other hand, Betty Stone, the realtor employed by Century 21 Action Realty, directly disputed Cummins' allegations:
 Q. What was discussed at the time if you recall?
 A. . . . He answered . . . He read the multiple listing book and when he got down to the bottom where it is noted on the listing that the house has old termite damage but has been treated — he asked me what that was and I told him, I said, that means that it has had termites but has been treated. And, I said, before you buy the house, before it's closed, there will be another termite clearance letter because a lender will not make a loan unless there is a new termite clearance letter.
 Q. Is [that] the only time that you talked with Mr. Cummins about termite damage?
 A. That is the only time.
(Vol. II, R. 91-92. See also Vol. II, R. 96-104).
Therefore, it becomes apparent that a clear issue of fact was presented to the jury i.e., did Cummins know about any prior termite damage? After considering the evidence, the jury concluded that Cummins did indeed know about the damage, because they found for the defendant.
On appeal, this Court will not second-guess the findings of fact made by a trial jury on the issue of liability, in this case where the prior termite damage was revealed by the defendants to the plaintiff. A determination, if supported by credible evidence, is within the exclusive province of the jury to decide and this Court has held that such findings will not be disturbed on appeal if supported by the evidence. Burnham v. Tabb,508 So.2d 1072, 1076 (Miss. 1987); Jackson v. Griffin,390 So.2d 287, 289 (Miss. 1980). In this case, just such a clear factual dispute was presented.
This Court has also discussed the exclusion of testimony concerning damages, when the ultimate issue of liability was decided adversely to the appellants' position. In such cases, this Court has held that there is no need to address the propriety of how damages are assessed, when the ultimate issue of liability, as decided adversely to the appellants' position, is upheld on appeal. McKinnon v. Batte, 485 So.2d 295, 299 (Miss. 1986); Helveston v. Gibson Products Co. of Hattiesburg, Inc.,192 So.2d 389, 390-391 (Miss. 1966).
Although factually similar in nature, this case is otherwise distinguishable from another recent decision by the Court concerning the proper measure of damages to a residence. In Wall Wall v. Swilley Swilley, 562 So.2d 1252 (Miss. 1990), summary judgment had been granted against the plaintiff due to the "legal insufficiency" of their proof on the matter of damages. This Court reversed this finding of summary judgment in favor of the appellees and remanded the case for a new trial.
The crucial distinguishing factor between that case and the one currently before the Court, is that in Wall Wall, supra, this Court went to great lengths to point out that the issue of liability was not being decided. "The Walls are limited to recovering the reasonable losses they necessarily incurred byreason of the Swilleys' actionable conduct." Wall Wall, at 1258.
In Wall Wall, supra, this Court conceded the issue of liability on the part of the appellees. In the case sub judice,
no such concession can be made, because the issue of liability was properly submitted to the jury and they, as factfinders, decided the issue adversely to the appellant's position. Based on a review of the record in the case, this Court concludes that the evidence *Page 1386 
was sufficient to support the jury's finding. Therefore, we affirm its finding.
 III.
DID THE TRIAL COURT COMMIT ERROR IN OVERRULING THE APPELLANTS' MOTION IN LIMINE AT THE OUTSET OF THE TRIAL?
As stated previously, the settlement was reached between Teddy Cummins and Mann Termite Pest Control for $10,000.00 with a covenant not to sue. Prior to jury selection, Cummins filed a motion in limine asking the court to exclude anything concerning or pertaining to the settlement entered into between the parties. The motion was overruled, and during his voir dire examination of the jury, Cummins' attorney referred to the settlement that had previously been made between Cummins and Mann.
Rule 408 of the Mississippi Rules of Evidence states the following:
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.
During cross-examination, Cummins was asked about the fact that he had originally filed a lawsuit against Mann Pest Control, as well as Century 21 and Betty Stone. He admitted that he had settled the lawsuit with the Pest Control Company. He was asked what sum of money he received from the settlement and he testified that it was $10,000.00, including a covenant not to sue. The settlement issue was raised by Cummins' own attorney during voir dire; furthermore, he failed to object to the line of questioning on cross-examination. The assignment of error is overruled.
 IV.
DID THE TRIAL COURT ERR IN GRANTING THE APPELLEES' MOTION FOR DIRECTED VERDICT AT THE CONCLUSION OF THE APPELLANTS' CASE?
Under the case law of this state, when a party moves for a directed verdict, the trial court "must consider the evidence before it at that time in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that may reasonably be drawn from that evidence."Hall v. Mississippi Chemical Exp., Inc., 528 So.2d 796, 798 (Miss. 1988) (quoting Upton v. Magnolia Electric PowerAssociation, 511 So.2d 939, 942-43 [Miss. 1987]). See also Dalev. Bridges, 507 So.2d 375, 377 (Miss. 1987); Jones v.Hatchett, 504 So.2d 198, 205 (Miss. 1987).
In the case sub judice, there is no merit to the appellant's claim. The trial court granted a directed verdict as to Cummins' claims based on fraud, gross negligence, breach of warranty, and strict liability. The record in this case is wholly devoid of any proof to support these claims. Therefore, the trial court did not err by granting the directed verdict in favor of the appellees. Furthermore, the ultimate issue of liability based on negligence or negligent misrepresentation, was submitted to the jury; therefore, there is no merit to this assignment of error.
DID THE TRIAL COURT ERR IN DENYING APPELLANTS' MOTION FOR A NEW TRIAL?
Under the law of this state, the "grant of a new trial is predicated upon the weight of the evidence, as distinguished from its legal sufficiency." Maxwell v. Illinois Central GulfRailroad, 513 So.2d 901, 908 (Miss. 1987). In order to reverse a trial court's ruling on a motion for a new trial, it must be clear "that the trial judge's action constitutes an abuse of discretion." Gill v. W.C. Fore Trucking, Inc., 511 So.2d 496, 498 (Miss. 1987). Thornhill v. Wilson, 504 So.2d 1205, 1209 (Miss. 1987). In this *Page 1387 
case, it is clear that Teddy Cummins has suffered a great deal from the fact that his home is riddled with damage caused by termites.
However, the issue of whether or not Century 21 Realty and Betty Stone should be held accountable for this fact was submitted to the jury on a theory of negligence or negligent misrepresentation, and the jury found in favor of the defendants. In light of the fact that the testimony was fully developed from both sides on the issue of liability, and was presented to the jury, and they found in favor of the appellees in this case, this Court concludes that the trial court did not err by refusing to grant the motion for a new trial. Therefore, there is no merit to this assignment of error.
For the foregoing reasons, this Court affirms.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
[1] From a factual perspective, the testimony of these two witnesses forms the basis of this entire case; Cummins maintains steadfastly that he was never informed of the termite damage to the home, while Ms. Stone was equally certain during her testimony that she had told him face to face of the preexisting damage to the home and that he had seen with his own eyes the fact of the termite damage from the listing in the multiple listing book used by her realty. Ms. Stone testified that she did not know the full extent of the termite damage to the home, but did concede that had she known of the extent of the termite damage, she would have advised Cummins not to purchase the home.
[2] Mr. Abide examined the home and the extent of the damage in April of 1987, over a full year from the time the home was purchased. (Vol. II, R. 118-125). During cross-examination, he testified that he could not state for certain if the condition of the home was the same in April of 1987 as it was in January of 1986. (Vol. II, R. 125).