574 So.2d 596 (1990)
I.C. JAMES
v.
Terry C. MABUS and Leslie Mabus.
No. 07-CA-59244.
Supreme Court of Mississippi.
December 12, 1990.
*598 Trent L. Howell, Water Valley, for appellant.
J. Terry Peeples, Coffeeville, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
As Chief Justice Lee aptly wrote in Strong v. Bostick, 420 So.2d 1356 (Miss. 1982):
Many men, including this writer, feel that a person who has never seen squirrels jump from limb to limb in the deep swamp on a frosty Fall morning; or has never heard a wild turkey gobble in April or seen him strut during mating season; or has never watched a deer bound through the woods and fields, or heard a pack of hounds run a fox, or tree a coon (racoon); or has never hunted the rabbit, or flushed a covey of quail ahead of a pointed bird dog; or has never angled for bass or caught bream on a light line and rod, or taken catfish from a trotline and limb hook; has never lived.
420 So.2d at 1364.
Just as many hunters are impassioned with the beauty of the woods and wildlife and with the challenge of the hunt, so farmers and landowners also often feel strong bonds to their land. To these landowners and farmers, persons who have never tilled the soil and felt its richness in their hands; or have never watched the daily growth of crops as they matured from seeds; or have never wondered whether their seemingly endless hours of work would result in an abundant harvest; or have never observed cattle and horses giving birth; or have never laughed at the awkwardness of the newborn foal; have never lived.
Today's case is of public interest to hunters, farmers and landowners. Clashes between the two, though infrequent, are unavoidable. Not infrequently hunters track deer in areas close to farmers or landowners' property. Hunters have a right to take deer in season and to use dogs to hunt deer in certain areas, but they are not free to act irresponsibly. Moreover, they are not free to trespass on land owned by others and they are responsible for the consequences thereof. Today's decision in no way should be taken as an advocation by this Court in favor of either group. The occurrence was unfortunate and should the facts have been slightly different the outcome could easily have favored the other party.
Leslie, a/k/a Buddy, Mabus lives on a farm where he and his son, Terry Mabus, raise Walker dogs which they use to track and run deer. On the morning of November 29, 1985, Terry Mabus and his father, Leslie, a/k/a Buddy, Mabus planning to hunt deer turned their Walker dogs loose approximately two hundred yards north of Buddy's dog pen. The dogs jumped a deer[1] and headed north towards I.C. James' property, which is approximately two miles from where the dogs were turned loose.
James had his land posted and Buddy Mabus knew James did not allow hunting on his land. At least two of their dogs ran onto James' land. The only eyewitness to *599 the events which occurred after that was James, who testified that as he stopped to open the gate to his pasture, he heard hunting dogs south of his place heading east. He listened for five or ten minutes and then saw his geese flying across his lake and heard his ducks making noise. He grabbed his rifle from behind his truck seat, pointed it out the window of the truck and drove through his pasture to the lake where he saw two Walker hounds attacking his ducks. The dogs had killed two Mallard drakes and had caught two hens. James shot at them, but did not know whether he hit them because they ran off. James followed the dogs until they left his property.
Terry testified that he had stopped approximately a half a mile east of James' place and was listening to the dogs running toward the road when he heard the shots, then he heard only silence. Wondering about the sudden quiet Terry drove to a red gate to James' property where he believed he had last heard the dogs. James came to the gate and told Terry he had shot the dogs. Terry asked what the dogs were doing, and James said, "They were on my land." A short time later Terry found one of the dogs near the red gate nervous and shaking. Three days later another dog returned to Mabus' with three pellet shots in his hip. Two dogs never returned.
Buddy testified that he also heard the dogs as they crossed onto James' land. Seconds after they crossed, he heard shots and then silence. After Buddy learned the dogs had been shot, he met Terry at James' house. James told Buddy he shot the dogs because they were on his land. He made no statement at that time that the dogs had attacked his ducks or geese. James did say that the dogs were in a bad way when he left them and that there was no need for them to look for the dogs on his land because he followed them until they left of his property.
At trial James denied telling either Terry or Buddy that he left the dogs in a bad way or anything to that effect. Further, James failed to mention to either of the Mabuses or in his deposition that the dogs had been attacking his ducks, though he testified that he did mention to his daughter on the morning of the event that he was having some trouble with "dogs in his ducks". James's explanation for the omission was that if the Mabuses knew what the dogs had done, they would have denied ownership. James contended that he saw two dead ducks and one crippled one. James' daughter also testified that a few months after the incident she saw one dead duck and a crippled one by their pond.
At the close of the Mabuses' case-in-chief, James moved for a directed verdict on grounds that the Mabuses put on no proof, nor raised any inferences that the dogs were in fact dead or that James hit any dogs when he shot at them. The proof showed that one dog found by Terry Mabus immediately after the shots were heard did not have any pellet shots in him and though the dog which returned three days after the incident did have pellets in his hip, the Mabuses did not show that the shots came from James' rifle. The trial court denied James' motion for a directed verdict finding that reasonable inferences could be drawn from the evidence.
James later moved for a directed verdict and a j.n.o.v., and in the alternative for a new trial. The trial court denied the motions finding that there were numerous witnesses who testified for each party, conflicts in the evidence, and inconsistencies which made this a classic jury case.

I.
In our state landowners "[t]he owner ... of any poultry ... may kill any dog in the act of chasing or killing such poultry ..., and any such person shall not be liable therefor to the owner of the dog." Miss. Code Ann. § 95-5-19 (Supp. 1991). If in fact the Mabuses' dogs were attacking James' ducks he had a statutory right to shoot and kill them without liability. The jury, however, did not accept James' testimony and found in favor of the Mabuses. Consequently, the issue before the Court today is whether the evidence was sufficient for the jury to determine that the Mabuses' dogs were not attacking James' *600 ducks and geese and whether the proof was sufficient for the jury to find that James did in fact kill the Mabuses' dogs. If the answer to either of these issues is no, then the trial court should have granted James' motions for a directed verdict, j.n.o.v. or a new trial.

II.

DID THE TRIAL JUDGE ERR IN OVERRULING JAMES' MOTIONS FOR A DIRECTED VERDICT OR JNOV?
James first argues that his motions for a directed verdict and a j.n.o.v. should have been granted because the jury was required to accept as true his testimony that the Mabuses' dogs were attacking his ducks because the testimony was uncontradicted and unimpeached. We apply the same standard to reviewing a motion for j.n.o.v. as to reviewing a motion for a directed verdict made at the close of all the evidence. Turner v. Turner, 524 So.2d 942, 944 (Miss. 1988); Upton v. Magnolia Elec. Power Ass'n, 511 So.2d 939, 943 (Miss. 1987). The evidence is considered in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Goodwin v. Derryberry Co., 553 So.2d 40, 42-43 (Miss. 1989). If the evidence is sufficient to support a verdict in favor of the non-moving party, the trial court properly denied the motion. Cummins v. Century 21 Action Realty, Inc., 563 So.2d 1382, 1386 (Miss. 1990); Goodwin v. Derryberry Co., 553 So.2d at 42-43.
Our law supports James' contention that inherently probable, reasonable, credible and trustworthy testimony uncontradicted by the evidence must be accepted as true. Reeves Royalty Co., Ltd. v. ANB Pump Truck Serv., 513 So.2d 595, 599 (Miss. 1987); Hewlett v. Henderson, 431 So.2d 449, 452 (Miss. 1983); Tombigbee Elec. Power Ass'n v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953); Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311 (1949). Consequently, if James is correct in his allegation that his testimony was uncontradicted and unimpeached, then his shooting of the dogs was privileged pursuant to Miss. Code Ann. § 95-5-19 (Supp. 1990).
The trial judge found that James' testimony was sufficiently contradicted to allow the jury to determine the witness's credibility. This Court gives the trial court's determination whether a jury issue was presented by the evidence great respect. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 380 (Miss. 1986); City of Jackson v. Locklar, 431 So.2d 475, 479 (Miss. 1983). However, if the trial judge was manifestly wrong in basing his decision on the facts this Court will reverse. Holliman v. Cherry & Asso., 569 So.2d 1139 (Miss. 1990); Graham v. Bank of Leaksville, 556 So.2d 1079, 1080 (Miss. 1990); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980).
From a perusal of the record we find that the trial court did not err in determining that because James' testimony was contradictory, the credibility and weight of James' testimony was a jury determination. Consequently, the trial judge did not err in denying James' motion for a directed verdict and j.n.o.v. on this ground. This assignment of error has no merit.
James next argues that he was entitled to a directed verdict or a j.n.o.v. because the Mabuses put on no proof that the dogs were dead or had been shot by James. While this Court endorses the rule that verdicts must rest upon reasonable probabilities and not mere possibilities, Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 380 (Miss. 1986) (cites therein); Jesco, Inc. v. Shannon, 451 So.2d 694, 700 (Miss. 1984), a verdict found on circumstantial evidence will stand unless it is opposed by a decided preponderance of the evidence or is based on no evidence whatever. Hinton v. McKee, 329 So.2d 519, 521 (Miss. 1976) (Robertson, J., dissenting). We previously have found that a jury may infer from circumstantial evidence facts of death of an animal as long as such inference is reasonable. See Providence Washington *601 Ins. Co. v. Weaver, 242 Miss. 141, 133 So.2d 635, 637 (Miss. 1961); cf. Bullock v. State, 447 So.2d 1284, 1287 (Miss. 1984). Whether there was any circumstantial evidence from which a jury reasonably could infer death or injury to the dogs by James was a determination to be made by the trial court; the weight to be given this evidence was for the jury. See Hinton v. McKee, 329 So.2d 519, 521 (Miss. 1976).
We agree with the trial court's finding that there did exist circumstantial evidence from which the jury reasonably could have concluded that the dogs ran onto James' land and were shot and injured or killed by James. Thus, the trial court did not err in denying James' motion for a directed verdict or a j.n.o.v. This argument has no merit.

III.

DID THE TRIAL COURT ERR IN DENYING JAMES' MOTION FOR A NEW TRIAL?
A lesser showing by the Mabuses is required for a new trial than that necessary to grant a motion for j.n.o.v. Goodwin v. Derryberry Co., 553 So.2d 40, 45 (Miss. 1989) (Robertson, J., concurring in part, dissenting in part). The reason behind this rule is that a motion for j.n.o.v. challenges the legal sufficiency of the evidence to support the verdict, whereas a motion for a new trial challenges the weight of the evidence. Cummins v. Century 21 Action Realty, Inc., 563 So.2d 1382, 1386 (Miss. 1990). Unless the lower court abused its discretion in finding that the verdict was not against the overwhelming weight of the evidence, we will not reverse. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Cummins v. Century 21 Action Realty, Inc., 563 So.2d at 1386; see Miss.R.Civ.P. 59.
In determining whether the evidence was sufficient to support the verdict, all conflicts in evidence and all reasonable inferences from the testimony will be construed in the Mabuses' favor. Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss. 1989). Moreover, we will assume that the jury drew every permissible inference from the evidence offered in favor of the Mabuses. Bobby Kitchens, Inc., 560 So.2d at 131; Burnham v. Tabb, 508 So.2d 1072, 1077 (Miss. 1987).
The jury accepted the Mabuses' testimony and found the circumstantial evidence sufficient to prove the death of the Mabuses' dogs. James argues that the jury's verdict was against the substantial weight of the evidence. We have recognized that the substantial weight of the evidence standard as well as the overwhelming weight of the evidence standard is without any real meaning. Bobby Kitchens, Inc., 560 So.2d at 132; Jesco, Inc. v. Whitehead, 451 So.2d 706, 715-716 (Miss. 1984) (Robertson, J., specially concurring). In lieu of those standards this Court has endorsed weighing six specific factors to determine whether a new trial should be granted:
1) Has the search for the true facts proceeded as far as it reasonably may under the peculiar facts and circumstances of the case?
2) To what extent would it be unfair to the party in whose favor the verdict was returned in effect to give that party's adversary a second bite at the apple?
3) Considering the evidence, is there a substantial basis for believing that the jury disregarded their oaths and failed to follow the instructions of the Court in reaching its verdict?
4) Assuming arguendo that the verdict is unjust (by reference to the underlying facts of the transaction or occurrence, the complete truth of which we will never know), what is the impact of the "injustice" upon the party against whom the verdict has been returned?
5) If a new trial is ordered, will the party in whose favor the verdict has been returned be deprived of some fair advantage he enjoyed in the first trial?
6) Are there any other factors present, peculiar to the particular case of the parties, that would render just or unjust the grant or denial of a new trial?
*602 Bobby Kitchens, Inc., 560 So.2d at 132 (citing Jesco, Inc. 451 So.2d at 715-716).
James contends that at least four of these six factors favor granting him a new trial. James first alleges that it would not be unfair to the Mabuses if a new trial were granted because it will be more expensive for James to relitigate than the two Mabuses who can share expenses. Regardless that the Mabuses are two, relitigation will be expensive. Moreover it will cause more loss of time, delay and disruption of their affairs, and there may be other appeals and possible retrials. See Jesco, Inc., 451 So.2d at 716; Cf., Magee v. Griffin, 345 So.2d 1027, 1032 (Miss. 1977). We find that this factor weighs in favor of the Mabuses.
James next argues that since the testimony of James was unimpeached and uncontradicted, then the overwhelming weight of the evidence supports a finding that the jury violated their oath in determining that the shooting was privileged. This factor is violated when the jury's verdict is the product of passion, prejudice or any other arbitrary factor, or the jurors did not find the facts or apply the law. Jesco, Inc., 451 So.2d at 716. In James' first assignment of error we found that James' testimony was not required to be accepted as true by the jury and there was circumstantial proof of the death or injury of the Mabuses' dogs. Consequently, we find that the jury did not violate their oath. This factor weighs in favor of the Mabuses.
James next contends that the granting of a new trial will not deprive the Mabuses of any unfair advantage. The Mabuses have not alleged any deprivation, so this factor weighs in favor of James.
The fourth factor which James contends supports the granting of a new trial is the impact upon James and other landowners if the verdict is allowed to stand. James argues that if this verdict stands it will have a chilling effect on his efforts to protect his domestic ducks and geese, as well as on the efforts of other landowners to protect theirs. "Landowners will be afraid to shoot dogs attacking their poultry and livestock for fear that they will be sued for outrageous sums by disgruntled dog owners."
This is James' most powerful argument. Under our law if the impact would be substantial, in view of an individualized consideration of the parties and the case, then this factor will militate in favor of a new trial. Jesco, Inc., 451 So.2d at 716. The jury's verdict read on its face indeed could have a chilling effect on some landowners protecting their livestock and poultry. Our decision today, however, does not change the protection offered by statute which absolves James and other landowners from liability when a dog is attacking their poultry or livestock. The issue presented on appeal is one of credibility, and we choose to follow our general rule that credibility of the witnesses and the weight of the evidence is a determination to be made by the jury. Andrew Jackson Life Ins. Co., 566 So.2d at 1177; Bobby Kitchens, Inc., 560 So.2d at 132.
The jury after hearing all the testimony chose not to believe James' assertion that the Mabuses' dogs were attacking his ducks. If James had stated that the dogs were attacking his ducks to either of the Mabuses or had mentioned the fact in his deposition, the jury may have believed his version of the facts. This factor weighs against James.
After balancing the six factors we find that the trial judge's denial of James' new trial motion was not an abuse of discretion. This is not to say that in other circumstances we would not find error. Had the Mabuses turned their dogs loose near James' property rather than two miles away or had James told the Mabuses that their dogs had been attacking his ducks, we may have been more inclined to find that James was absolved of liability under Miss. Code Ann. § 95-5-19 (Supp. 1990).
We hold that the issues in this case were properly decided by the jury and the trial court did not abuse his discretion in denying James' motion for a directed verdict, j.n.o.v. or a new trial. The jury's verdict at the trial level is affirmed.
AFFIRMED.
*603 ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS and DAN M. LEE, P.JJ., dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
While it is abundantly clear that the majority has carefully considered and weighed this case, I am of the view that the verdict of the jury is against the overwhelming weight of the evidence, and that James is entitled to a new trial. I would reverse and remand.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] "`[O]n track' means that they [the dogs] put off an occasional bark; and after the dogs jump, then they start a continuous barking. And it's a shrill bark... . But if you're a hunter, then it's very easy to determine if the dogs are on track or if they have jumped or if it's an occasional bark if they're trailing."