MODIFIED OPINION ON MOTION FOR REHEARING
PAYNE, J.,
for the Court:
¶ 1. The original opinion is withdrawn and the following is substituted. The motion for rehearing is denied.
PROCEDURAL HISTORY
¶ 2. Joseph Holiday was indicted by the Adams County Grand Jury on a charge of murder. The indictment was filed of record on March 15, 1996. A trial was held on March 27, 1997, and ended in a hung jury. A mistrial was declared. A second trial was held on July 22-23, 1997, in the Circuit Court of Adams County, Mississippi. Holiday was found guilty. Thereafter, Holiday filed a motion for a new trial. This was denied. Feeling aggrieved, Holiday appeals.
FACTS
¶ 3. On January 13, 1996, in Natchez, Mississippi, Tommy Hawkins was shot, while in his vehicle near Martin’s Lane. No *397 one testified that they actually saw Holiday fire the shot which killed Hawkins, but several eyewitnesses testified that Holiday was standing near Hawkins’s car when Hawkins was killed. One eyewitness, Anthony Chatham, testified that he saw a chrome object in Holiday’s hand.
ISSUES PRESENTED
I. WHETHER THE CONVICTION OF APPELLANT HOLIDAY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE VERDICT RENDERED.
¶ 4. Holiday challenges the legal sufficiency of the evidence and the weight of the evidence as evidenced by the citation of error. However, the thrust of this citation of error is founded upon an argument based upon the weight of the evidence. In spite of the emphasis placed upon the verdict being against the overwhelming weight of the evidence, we address the sufficiency of the evidence as well.
¶ 5. Since an argument on the sufficiency of the evidence requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the circuit court overruled Holiday’s motion for a directed verdict (as the record is devoid of a lodged JNOV motion). See Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987). Nevertheless, we address this argument from the perspective that a JNOV was properly lodged. The standard of review for a JNOV is the same as for a directed verdict. James v. Mabus, 574 So.2d 596, 600 (Miss.1990). Both motions for directed verdict and motions for a JNOV challenge the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993). Where a defendant moves for a JNOV, the trial court considers all of the credible evidence consistent with the defendant’s guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence. McClain v. State 625 So.2d 774, 778 (Miss.1993).
¶ 6. In the instant case several witnesses testified. Holiday testified that he was not in the area where Tommy Hawkins was killed. Holiday’s mother claims that her son was at home all day with the flu and did not leave the house. The State provided numerous eyewitnesses who placed Holiday at the scene of the shooting that evening. Roosevelt Williams testified that he was visiting Martin’s Lane to purchase some cocaine when Tommy Hawkins offered both Williams and Sylvester Brown a ride. Williams accepted the ride as did Brown. Williams testified that he turned his attention toward Brown to let Brown in the vehicle, and when he turned around a pistol was sticking through the driver’s window. Though Williams could not see the gunman’s face he heard the unidentified man state, “Well, you owe me some money.” According to Williams, Hawkins started to pull away and was shot while doing so. Hawkins’s foot was applied to the vehicle’s accelerator, and the truck careened into a utility pole.
¶ 7. Corey Ashley testified that he was visiting his cousin’s house in Martin’s Lane that evening. Ashley states that when he left the area, Holiday was with a friend, Anthony Chatham.
¶ 8. Tim Belton stated that he (Belton) was standing on Martin’s Lane talking to some friends when Hawkins stopped his vehicle. Belton testified that both Chat-ham and Holiday were standing near Hawkins’s vehicle when he heard a gunshot. Belton stated that he ran from the scene.
¶ 9. Thelma Hoggert was also in Martin’s Lane to buy cocaine when she heard a gunshot. Though she did not know the individual who she saw leave Hawkins’s vehicle after she heard the gunshot, she later picked his picture from a photo lineup. This individual was Joseph Holiday.
*398 ¶ 10. Anthony Chatham testified that he sold a “fake” rock of cocaine to Thelma Hoggett, while Holiday walked to Hawkins’s vehicle. Chatham stated that he heard Holiday arguing with the driver of the vehicle, then he testified that he heard a loud noise, thinking it was the vehicle backfiring. Chatham testified that he saw Holiday with a chrome object in his hand. Specifically, Chatam stated:
Well, it appeared to be a gun, like from where I was standing just looking, it was the outline of a gun, the shape of a gun; it just appeared to be a gun in his hand.
¶ 11. Holiday further argues that the verdict was against the weight of the evidence. When contradictory testimony exists, this Court will “defer to the jury, which determines the weight and worth of testimony and credibility of the witness at trial.” Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992). The jury bears sole responsibility for determining the weight and credibility of evidence. May v. State, 460 So.2d 778, 781 (Miss.1984). With that in mind, a new trial is appropriate only where a verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand, would be to sanction unconscionable injustice. Wetz, 503 So.2d at 812. We will reverse and order a new trial only if, accepting as true all evidence favorable to the prosecution, we determine that the trial court abused that discretion. McClain, 625 So.2d at 778.
¶ 12. Ultimately, we are faced with conflicting accounts of what transpired. Holiday maintains his innocence, while numerous accounts of his being at the scene of the crime place him in the position of being the gunman. The jury heard, analyzed, and reviewed the testimony as proffered by each witness, examined the appearance and demeanor of each witness, and consolidated all of the testimony for a final determination against Holiday.
¶ 13. Given the function of the jury and our reluctance to disturb its decision, coupled with conflicting accounts of what occurred, we find this citation of error to be without merit.
II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL BECAUSE THE DELAY VIOLATED CONSTITUTIONAL GUARANTEES AND BECAUSE THE 270 DAY RULE REQUIRED DISMISSAL.
¶ 14. The substance of Holiday’s next argument centers on his belief that he was denied the right to be tried within a reasonable time. His argument is based upon both the constitutional right to a speedy trial and Miss.Code Ann. § 99-17-1 (Rev.1994).
¶ 15. With that said, we turn our attention to the statutory 270 day rule. Holiday was arrested on January 16, 1996, indicted March 15, 1996, and was arraigned on March 17, 1997. His first trial on this murder charge occurred on March 27, 1997. Prior to his arraignment, Holiday’s case was placed on the court docket for the November 1996 term of court and his attorney announced that he was ready to proceed. The State requested and received a motion for continuance for the November 1996 term until the March 1997 term of court because the State was looking for a material witness. On March 17, 1997, during the same proceeding in which Holiday was arraigned, the trial court heard and denied his motion to dismiss based upon a lack of a speedy trial. Holiday insists that he did not ask for any continuances or delay his case from being tried.
¶ 16. The State contends that Holiday’s conviction should not be reversed. Concerning the period of time after his arrest on January 16, 1996, the record reflects that Holiday was indicted on March 15, 1996. According to the State, Holiday was not immediately arraigned after his indictment because his appointed attorney, Leonard Rosenthal, was not present. In point of fact, the actual arraignment was on March 17, 1997, ten days immediately *399 prior to his first trial in March of 1997. The March 25, 1997 trial ended in a mistrial and a second trial was held on July 21, 1997.
¶ 17. Miss.Code Ann. § 99-17-1 (Rev. 1994) reads as follows:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned. (emphasis added)
With regard to this statute, our supreme court has stated:
Where the accused is not tried within 270 days of his arraignment, the Statfe has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial. Nations v. State, 481 So.2d 760 (Miss.1985). Continuances for “good cause” toll the running of the 270-day period, unless “the record is silent regarding the reason for the delay,” and then “the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue.” Vickery v. State, 585 So.2d 1371, 1375 (Miss.1988)_ Continuances that are attributed to the defendant stop the running of the clock and are deducted from the total number of days before trial. Vickery, 535 So.2d at 1376. (emphasis added)
Herring v. State, 691 So.2d 948, 953 (Miss.1997). Since the case was tried within the same month as the arraignment, appellant’s argument on the statutory issue fails.
 ¶ 18. Applying the constitutional speedy trial test to the facts shown, we find that the defendant was not deprived of a speedy trial. Holiday’s constitutional right to a speedy trial is weighted under the factors established by the United States Constitution in Barker v. Wingo, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker factors read as follows:
(1) the length of the delay;
(2) the reason for the delay;
(3) the defendant’s assertion of his right to a speedy trial; and
(4) whether any prejudice resulted to the defendant as a result of the delay.

Id.

¶ 19. We are also mindful that when evaluating these factors that:
No mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive.... Nor is the balancing process restricted to the Barker factors to the exclusion of any other relevant circumstances.
McGhee, 657 So.2d at 801-02 (citing State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994)).
¶ 20. We first address the length of the delay. The constitutional speedy trial clock begins to run from the date of arrest. McGhee v. State, 657 So.2d 799, 802 (Miss.1995). Furthermore, a delay of eight months or longer is presumptively prejudicial. Herring, 691 So.2d at 955. Holiday was arrested on January 16, 1996 and was tried on March 25,1997 (first trial). Since Holiday was not brought to trial within eight months the delay is presumptively prejudicial, thus this factor favors him.
¶ 21. Next we address the reasons for delay. As stated above in our analysis of the Miss.Code Ann. § 99-17-1 (Rev.1994), Holiday’s trial was delayed for “good cause”. In addition, the record shows no action by the State to deliberately impede Holiday’s trial for its own tactical advantage or to undermine the defense’s resources. When the record is devoid of any bad faith on the part of the State coupled with valid reasons for the delay, then this factor will not weight heavily against the *400 State. Duplantis v. State, 708 So.2d 1327, 1335 (Miss.1998).
¶ 22. Next, we look at the time Holiday-asserted his right to a speedy trial. Holiday submits that he requested a speedy trial. However, Holiday waited until the Friday before the trial was set to start on a Monday morning and then filed his motion for a speedy trial.[1] We find that this does not weigh against the State.
¶ 23. Finally, we must look at any actual prejudice to Holiday as a result of the delay. Holiday does not demonstrate any actual prejudice, though he argues that he remained incarcerated during this time while waiting to be brought to trial. While undoubtedly Holiday suffered anxiety and concern while incarcerated, there is no prejudice of which he complains on appeal. That being the case, we find that his incarceration does not weigh against the State.
¶ 24. He also states that he was unable to contact all of his witness. He argues that if the State had tried him sooner, he would have had the testimony of two witnesses, which because of delay became unavailable. Though his brief does not mention the names of the two witnesses, the record reveals that their names are Bobby and Betty Lou Davis. According to Holiday, Bobby and Betty Davis reside in Minnesota. We are unsure why they declined to appear for Holiday’s trial, and we are unsure of the purported impact of their respective testimony would be. Consequently, we disagree with Holiday.
¶ 25. Having reviewed all of the Barker factors in their entirety, and after reviewing the total circumstances of this case, we conclude that Holiday was not denied his constitutional right to a speedy trial. Since the statutory speedy trial clock was tolled for “good cause” and there was no constitutional violation to a speedy trial it was proper of the trial court to deny Holiday’s motion to dismiss for failure to prosecute. This assignment of error is without merit.
III. APPELLANT WAS AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL BY THE COURTS DENIAL OF HIS MOTION FOR NEW COUNSEL AND BY TRIAL COUNSEL’S FAILURE TO TIMELY REQUEST A PSYCHIATRIC EXAMINATION.
¶ 26. Holiday next contends that his appointed counsel was deficient in providing adequate representation in his defense. His specific objections are that he moved to appoint new counsel to represent him prior to his first trial and that he moved for the trial court to appoint him a new attorney prior to his second trial. Holiday also contends that he should have received a change in venue, that his trial counsel failed to have a psychiatrist evaluate him for mental instability, and that the State’s witnesses should have been ordered to have a mental examination of their own.
¶ 27. In order to succeed on ineffective assistance of counsel, the defendant must meet the two-pronged test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and reiterated by the Mississippi Supreme Court as follows:
Under the first prong, the movant “must show that the counsel’s performance was deficient and that the deficient performance prejudiced the defense.” Here there is a strong presumption of competence. Under the second prong of the test, the movant must show that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” The defendant must prove both prongs of the test.
*401 Mohr v. State, 584 So.2d 426, 430 (Miss.1991).
¶ 28. As to the first prong, it is presumed “that trial counsel’s conduct is within the wide range of reasonable conduct and that decisions made by counsel are strategic.” Edwards v. State, 615 So.2d 590, 596 (Miss.1993). Understandably, the Strickland standard “is difficult to establish, and appropriately so.” Knox v. State, 502 So.2d 672, 676 (Miss.1987). We do not find the defendant’s attorney to be deficient because his attorney did not request a psychiatric examination for him (Holiday). Furthermore, we do not find that Holiday was prejudiced because he was not appointed an attorney other than the one assigned to him. Thus, we do not reach an analysis of the second prong of Stñckland.
¶ 29. As stated above, this Court can not find that Holiday was prejudiced by his inability to garner the services of someone other than his appointed counsel. Furthermore, this Court can not find that Holiday was prejudiced because his attorney failed to press home the idea that several of the State’s witnesses should be mentally evaluated, nor can we state that Holiday was prejudiced by the fact that his attorney did not request a mental evaluation for Holiday.
¶ 30. Holiday insists that his attorney should have requested that the trial judge grant him a mental evaluation. However, his attorney told the trial judge that he (Holiday) told him (attorney) that he did not need a mental examination. The trial judge noted from his observations that Holiday was a “very intelligent individual” and declined to grant Holiday a mental evaluation.
¶ 31. Commenting on Holiday’s appointed counsel, the trial judge stated that “[T]he Court having observed a previous trial in a previous term of Court wherein Mr. Rosenthal represented the defendant, and as I previously stated, from the Court’s observation, it was very obvious that Mr. Rosenthal very vigorously and strongly defended the defendant’s rights as evidenced by the results” (the trial judge referring to the first trial where Holiday received a mistrial). With that statement by the trial judge, coupled with the fact that an indigent defendant has the right to competent and effective counsel, but he does not have the right to an attorney of his own choosing, Wheeler v. State, 536 So.2d 1347, 1354 (Miss.1988), we find that Holiday’s citation of error concerning his appointment of counsel to be without merit.
¶ 32. Holiday also insists that his attorney should have filed a motion to request the mental evaluation of the State’s witnesses. The trial judge stated that he was without authority to force a witness for the State to undergo a psychological examination. We agree.
¶ 33. Holiday also argued that he wanted to file a motion for a change in venue. The trial court noted that there had been no publicity about the crime between the first and second trials. Accordingly, the trial judge denied this motion. We agree.
¶ 34. Simply put, the defense attorney presented the best arguments available, but in the face of the evidence the State had mounted, he could do very little for Holiday. With the first prong of the Stñckland test unmet, the second prong necessarily fails. Holiday has not met the burdens required in Stñckland, thus he has no grounds for relief.
IV. WHETHER THE INDICTMENT FILED AGAINST THE APPELLANT WAS DEFECTIVE.
¶ 35. As noted by Holiday’s attorney on appeal, “[A]t the specific request and instance of Appellant that this argument be advanced to this Court for its consideration, Appellant submits that the indictment filed against him is insufficient.” Specifically, Holiday cites as error the fact that the date on which the indictment was filed is missing, a statement that the pros *402 ecution is brought in the name and by the authority of the State of Mississippi, the name of the county and judicial district in which the indictment is brought and the date and if applicable the time, on which the offense was alleged to be committed and the signature of the foreman of the grand jury is missing.
¶ 36. A review of the indictment will find that each element stated as missing in the indictment is present. With that said, we find Holiday’s citation of error to be without merit.
V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW TRIAL COUNSEL TO EXAMINE SYLVESTER BROWN.
¶ 37. Holiday next argues that the trial court was deficient in allowing Sylvester Brown to invoke his Fifth Amendment right against self-incrimination. At the time of trial Brown was under indictment as an accessory after the fact to the murder of Tommy Hawkins.
¶ 38. While it is undoubtedly true that Holiday has a basic right to present witnesses in his own defense, it does not follow that Holiday has a basic and fundamental right to force a witness to answer questions which would incriminate that witness.
¶ 39. As the Mississippi Supreme Court noted in Stringer v. State, 548 So.2d 125, 130 (Miss.1989):
To sustain the privilege ... in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim “must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.” (citation omitted).
Given the fact that the judge considered the circumstances of the witness, that Brown had been indicted as an accessory after the fact to murder, and that Brown could have stated self-incriminating facts against himself, we find this citation of error to be without merit.
CONCLUSION
¶ 40. The jury rendered a verdict against Holiday. Supported by credible evidence, we uphold that decision.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO ADAMS COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, and THOMAS, JJ., concur.
KING, P.J., concurs in result only.
IRVING and LEE, JJ., not participating.

. After a review of the record, we have failed to discover exactly when Holiday filed his motion for a speedy trial, although we have testimony from the district attorney’s office on this point. Before the trial court, the district attorney told the court that he received a copy for a motion for dismissal on speedy trial grounds just prior to this action.